United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| JANET LEE CATERINO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 18-10069-NMG |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Janet Caterino ("Caterino" or "plaintiff") seeks judicial review of the denial of her application for disability insurance benefits by Nancy A. Berryhill ("the Commissioner" or "defendant"), the Commissioner of the Social Security Administration ("the SSA"). Pending before the Court are plaintiff's motion to reverse or remand the Commissioner's decision (Docket No. 14) and defendant's motion to affirm that decision (Docket No. 18). For the reasons that follow, plaintiff's motion will be denied and the Commissioner's motion will be allowed.

**I.  Background**

**A.  Employment History and Alleged Disability**

Caterino was born in 1965. She completed 12 years of school. Her late husband owned a company that installed

bathtubs and glazed tiles.  She was the bookkeeper for that company and also helped her husband move materials to and from vans.  At some point before 2014, plaintiff's husband died.

On July 14, 2014, the alleged onset date for purposes of her application for disability insurance benefits, Caterino went to New England Neurological Associates and was seen by Dr. Arya Farahmand.  Caterino had been treated by Dr. Farahmand for migraine headaches two years before.  She again complained of migraines, severe neck pain that radiated down her right shoulder and occasional numbness in her right hand and fingers. Upon examination, Dr. Farahmand determined that she had normal strength and sensation in her arms.  Dr. Farahmand, nevertheless, ordered an MRI which was done in August, 2014.  It revealed several disc herniations.  At about the same time, Caterino also began complaining of numbness in her left arm and hand.  Dr. Farahmand referred her to an orthopedic surgeon for a second opinion.

In late August, 2014, plaintiff met with Dr. Joseph Weistroffer and complained of right-sided neck pain and numbness that radiated down her left arm into her fingers.  She also reported that her migraine headaches and neck pain had worsened over the previous two months. Dr. Weistroffer noted that plaintiff had significant bilateral stenosis at two of her discs which could have caused her pain.  Upon examination, Caterino

demonstrated a normal range of motion of her neck and shoulders and full strength and intact sensation in her arms. The doctor offered her injections to manage the pain and surgery if the injections were ineffective.

In November, 2014, plaintiff saw Dr. Farahmand again, reporting significant improvement in her headaches but noting pain when she moved her head and neck. She displayed no abnormalities in her extremities or focal neurological deficits. Dr. Farahmand administered an injection to further alleviate her pain.

Caterino next saw Dr. Farahmand in February, 2015. She reported that the earlier injection had relieved her pain for several months but that it had gradually recurred over the right side of her neck and head. She also reported that her migraine headaches were generally under control.

In April, 2015, Caterino met with Dr. Farahmand again. She reported that her headaches and her pain had improved after beginning a new medication, Topomax. Upon examination, she displayed no abnormalities in her extremities or focal neurological deficits. Dr. Farahmand prescribed a low dose of propanol to alleviate her migraines. That was Caterino's last medical appointment before her eligibility for disability insurance benefits expired on April 30, 2015.

**B. State Physician Medical Opinions**

Two doctors rendered opinions as to plaintiff's residual functional capacity ("RFC"), meaning her ability to perform physical and mental work activities on a sustained basis despite the limitations from her impairments. Both doctors were state agency physicians.

Dr. Robin Tapper performed a review of Caterino's then-existing medical record in June, 2015, and Dr. John Benanti did the same in September, 2015. Both doctors indicated that Caterino has exertional limitations of 1) lifting and/or carrying no more than 20 pounds occasionally and no more than 10 pounds frequently and 2) standing, sitting or walking no more than six hours out of an eight-hour workday. Both doctors agreed that Caterino has additional postural limitations with respect to 1) climbing ramps, stairs, ladders, ropes and scaffolds, 2) balancing, 3) stooping, 4) crouching and 5) crawling.

Neither doctor found that Caterino had manipulative limitations. Dr. Benanti specifically found that, based on her medical records, Caterino had no neurological deficits and her hand movements were normal despite her neck and shoulder pain. Based on their assessments of plaintiff's physical RFC, the doctors both concluded that she is able to perform light work.

### C. Subsequent Medical History

Since Caterino's last date of eligibility, she has continued to receive treatment from various doctors for her neck pain and related issues. In July, 2015, images from a thoracic MRI indicated moderate changes of cervical spondylosis in several of the discs in her neck and mild degeneration of the lower thoracic disc spaces. At about that time, she reported increased neck and right arm pain and several new problems, including 1) a burning sensation in her abdomen that radiated to her right leg and 2) low back, hip and leg pain. In August and September, 2015, Caterino underwent physical therapy for pain in her back and hip with little to no improvement in her pain levels. She continued to see Dr. Farahmand periodically for her chronic migraines, neck and back pain and also received numerous injections, including several to her lumbar spine.

In March, 2016, plaintiff had neck surgery to repair her herniated disc and spinal stenosis. She reported improvement with respect to her arm pain in the three and a half months that followed that surgery and she engaged in physical therapy to deal with general weakness in her arms. In August, 2016, however, Caterino reported to Dr. Farahmand a new complaint of abnormal sensation, swelling and numbness in her legs and Dr. Farahmand noted, for the first time, the possibility that Caterino had some degree of fibromyalgia.

By October, 2016, plaintiff's neck surgeon reported that she had experienced minimal reduction of the pain in her neck and right arm, even after surgery and physical therapy. She also told her surgeon that she had been diagnosed with fibromyalgia. Her surgeon noted, however, that it was unclear how much the recently diagnosed fibromyalgia contributed to her pain. In November and December, 2016, plaintiff met with a rheumatologist who determined that there was no evidence of a rheumatological autoimmune disease, such as lupus, but also suggested myalgia as a possible diagnosis. In January, 2017, Dr. Farahmand reiterated his suspicion that Caterino was suffering from fibromyalgia due to her history of migraines and chronic pain.

In February, 2017, plaintiff met with Dr. Salony Mujmudar, a rheumatologist in Dr. Farahmand's office, who indicated that plaintiff had demonstrated loss of motion and constant throbbing pain throughout her hands, feet, hip, shoulders, neck and low back.

Caterino has not engaged in substantial gainful employment since her alleged onset date of June 14, 2014.

**D.   Application for Disability Insurance Benefits**

In April, 2015, plaintiff filed an application for social security disability ("SSD") and disabled widows benefits ("DWB") under Title II of the Social Security Act ("the Act"), 42 U.S.C.

§§ 402(e), 416(i) and 423(d). Caterino's application for SSD benefits was predicated on her claims of degenerative disc disease and migraines, as well as anxiety, depression and personality disorders.[1]  Her application was denied in June, 2015, and, upon reconsideration, further denied in September, 2015.  She requested a hearing before an Administrative Law Judge ("ALJ") in October, 2015, and the hearing was held in February, 2017, before ALJ Brian Curley who published his decision in April, 2017.

**E.    The ALJ's Decision**

Applying a five-step sequential evaluation process, the ALJ determined that Caterino is not disabled under Sections 202(e), 216(i) or 223(d) of the Act.  The ALJ relied upon testimony presented at the disability hearing as well as medical reports and opinions from doctors.

As an initial matter, the ALJ determined that plaintiff satisfied the insured status requirements through April 30, 2015, which meant that she had to establish that her disability existed on or before that date to be entitled to SSD. See 42 U.S.C. § 423(a)(A), (c)(1).  The ALJ also determined that the end of her prescribed period for survivor's benefits was April 30, 2015, which meant that Caterino also had to establish the

---

[1] Caterino does not challenge the ALJ's findings or conclusions with respect to her mental impairments.

existence of her disability before that date to be entitled to DWB. See § 402(e)(1).

At step one, the ALJ determined that Caterino was not engaged in substantial gainful employment and had not been so employed since July, 2014.

At step two, the ALJ determined that Caterino had the following severe impairments: 1) degenerative disc disease, 2) headaches, 3) anxiety, 4) depression and 5) personality disorders. The ALJ rejected plaintiff's claimed additional disabilities of fibromyalgia, disorders of the shoulder, lupus and back pain, concluding that there was little evidence in the medical records that those impairments imposed more than minimal limitations on her ability to work. Specifically, the ALJ found that as late as 2017, Caterino demonstrated a fair and painless range of motion in both shoulders and in her upper and lower extremities. He also noted that those alleged disabilities failed the duration requirement of the Social Security Regulations.

At step three, the ALJ determined that, although plaintiff has severe impairments, none met or medically equaled the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.

Before proceeding to step four, the ALJ determined Caterino's RFC. He concluded that Caterino has the RFC to

perform light work with the following additional limitations: 1) she can sit, stand or walk up to six hours each in an eight-hour workday; 2) she can occasionally balance, stoop, kneel and crouch, but cannot climb ladders, ropes or scaffolds; 3) work is limited to simple tasks and occasional interaction with co-workers and the public; and 4) she is able to adapt to occasional changes in the work setting. In determining plaintiff's RFC, the ALJ considered both the objective medical evidence as well as her subjective complaints regarding the intensity, persistence and limiting effects of her symptoms.

In calculating her RFC, the ALJ first found that Caterino's medically determinable impairments could reasonably be expected to produce her alleged symptoms. He also found, however, that Caterino's complaints with respect to the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the objective medical evidence and other evidence in the record. The ALJ thus considered those subjective statements only to the extent they were consistent with the other objective medical evidence.

The ALJ emphasized that from August, 2014, to March, 2016, Caterino received only conservative treatment and that after surgery in March, 2016, she actually experienced significant improvement within a few months. The ALJ stated that in August, 2016, Caterino exhibited full motor strength and full range of

hand movements.  He also noted that in the fall of 2016, Caterino again demonstrated full motor functions with the ability to walk with a steady and independent gait, sit and arise easily from a chair and get on and off of the examination table without assistance despite her continued complaints of neck and right shoulder pain.

The ALJ also found that in January, 2017, Dr. Farahmand reported that Caterino exhibited normal motor strength, a normal gait and an intact range of hand movements.  He remarked that treatment notes from other health care providers from the same time period indicated that plaintiff had a fair and painless range of motion in her shoulders and other joints of her upper and lower extremities.

In addition to the objective medical evidence, the ALJ also placed great weight on the opinion evidence of the two state agency physicians, Drs. Tapper and Benanti, whose findings with respect to Caterino's physical limitations were entirely consistent with the objective medical evidence of the treating physicians.

The ALJ concluded that, despite consistent complaints of pain and numbness in her neck and upper extremities, the medical notes were unclear as to how much that pain affected her overall functioning and there was a consistent absence of significant physical findings to substantiate Caterino's subjective

complaints. Based on objective medical evidence and the opinions of the state agency physicians, the ALJ determined that Caterino's musculoskeletal impairments were not as serious as she alleged and supported no more than a limitation to work at the light exertional level with certain postural restrictions.

At step four, the ALJ determined that Caterino did not have the RFC to perform her past relevant work as an administrative clerk and storage laborer.

At the final step, the ALJ determined that, considering the plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that she could perform. Specifically, the ALJ decided, with the help of a vocational expert, that Caterino has the RFC to perform the requirements of cleaner, collator operator and mail sorter. Based on that finding, the ALJ concluded that Caterino was not disabled and thus ineligible for SSD and DWB. See §§ 402(e), 416(i), 423(d). At the disability hearing, the vocational expert also testified, however, that if plaintiff had been found to be limited to occasional reaching, handling and fingering, there would be no jobs available in the national economy which would have necessitated a finding by the ALJ that Caterino is disabled.

Caterino timely appealed the decision of the ALJ to the Appeals Council. In December, 2017, the Appeals Council denied

her appeal, rendering the ALJ's decision the final decision of the Commissioner.

**F.    District Court Action and Parties' Arguments**

In January, 2018, Caterino filed her complaint in this case.  Thereafter, she filed a motion to reverse or remand the Commissioner's decision, alleging that it was erroneous because 1) the ALJ failed to include any specific limitations in Caterino's RFC with respect to her shoulders, arms and hands despite determining that her degenerative disc disease imposed limitations on her physical functioning and 2) the ALJ and the Appeals Council ignored evidence that Caterino was suffering from fibromyalgia which should have resulted in further physical limitations in her RFC.  Caterino thus seeks remand of the Commissioner's decision to make additional findings with respect to her RFC.

In her motion, plaintiff emphasizes that she continued to have residual neck and right arm pain and numbness after surgery and physical therapy.  Given those consistent complaints, she contends that the ALJ did not have sufficient evidence to conclude she had no limitations in the use of her arms and hands.

Moreover, she suggests that the ALJ erred by dismissing her subjective complaints regarding the intensity, persistence and limiting effects of her symptoms without performing a pain

analysis or specifying the reasons for discounting her complaints. Plaintiff also notes that, based on the vocational expert's testimony, if the ALJ had found additional limitations in the use of her arms and hands, he would have determined that there are no jobs sufficiently available in the national economy for Caterino to perform.

In addition to the claimed error with respect to the RFC, Caterino submits that the ALJ and the Appeals Council erred by ignoring evidence of her fibromyalgia. She contends that the ALJ placed undue weight on the unreliable opinions of the two state agency physicians who did not have plaintiff's diagnosis for fibromyalgia at the time they made their RFC recommendation.

She also asserts that the ALJ did not offer sufficiently valid reasons for not considering fibromyalgia to be a medically determinable impairment. Specifically, she contends that the ALJ improperly relied on the fact there was no objective evidence to support the fibromyalgia diagnosis. That is not a permissible reason to ignore the signs and symptoms of that particular disease. Caterino submits that evidence of her fibromyalgia, particularly Dr. Mujmudar's assessment, should have been considered by the ALJ as relevant in analyzing her earlier symptoms and should also have been considered in determining her RFC.

In response to plaintiff's motion, defendant filed a motion to affirm the Commissioner's decision. First, Commissioner Berryhill argues that the opinions of the two state agency physicians, which are consistent with all the objective medical evidence, is substantial evidence to support the ALJ's decision. She asserts that it is plaintiff's burden to produce evidence to support specific limitations with respect to plaintiff's neck, arms and hands and that there is no such evidence in the record. Defendant maintains that there is ample evidence demonstrating that plaintiff had full motor strength and function in her arms and hands despite her complaints of pain and numbness.

Furthermore, the Commissioner notes that the ALJ's determination that Caterino is limited to light work does, in fact, include limitations related to her upper extremities, specifically a restriction on lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently. Defendant submits that the ALJ did not, therefore, err in failing to include further limitations in his RFC determination with respect to plaintiff's shoulders, arms and hands.

Defendant also contends that evidence of plaintiff's later diagnosis for fibromyalgia after the prescribed period is irrelevant to this case. Even assuming that evidence of such a condition is relevant, however, defendant nevertheless maintains that the ALJ appropriately considered it. Defendant notes that

-14-

the ALJ discussed fibromyalgia in his decision but found that plaintiff's treating physician was unsure of how that condition contributed to her ongoing pain.  Defendant also explains that the ALJ found that plaintiff continued to exhibit a fair and painless range of motion in her shoulders and upper extremities even after the diagnosis of fibromyalgia.

Defendant submits that there is substantial evidence to support the ALJ's determination that fibromyalgia did not affect plaintiff during the prescribed period.  Defendant explains that, more importantly, plaintiff has not demonstrated how her alleged fibromyalgia impacted her ability to work during the prescribed period or why her RFC should be more limited in light of that condition.

## II. Pending Motions

### A. Legal Standard

The Act gives United States District Courts authority to affirm, modify or reverse an ALJ's decision or to remand the case for a rehearing. 42 U.S.C. § 405(g).  A District Court's review of an ALJ decision is not, however, de novo. See Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).  The Act provides that the findings of the Commissioner are conclusive if 1) they are "supported by substantial evidence" and 2) the Commissioner has applied the correct legal standard. See 42 U.S.C. § 405(g); Seavey v. Barhart, 276 F.3d 1,

9 (1st Cir. 2001). If those criteria are satisfied, the Court must uphold the Commissioner's decision even if the record could justify a different conclusion. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987). Substantial evidence means evidence "reasonably sufficient" to support the ALJ's conclusion. Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998).

**B. Application**

After reviewing the record as a whole, the Court concludes that the Commissioner's decision is supported by substantial evidence and that the correct legal standard was applied. Caterino's complaint is essentially that the ALJ failed to include additional limitations in his determination of her RFC with respect to her arms and hands.

While there is evidence that Caterino suffered pain and numbness in her arms and hands, the ALJ explained that there was also consistent objective medical evidence indicating that plaintiff had full motor strength and substantial range of movement in her arms and hands. Significantly, no treating physician stated that Caterino's pain and discomfort severely impaired the functioning of her arms and hands and the ALJ referred to specific evidence in support of his conclusion that Caterino's impairments were not as limiting as she indicated. See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26

(1st Cir. 1986); see also Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (holding that substantial evidence supported ALJ's determination of the claimant's exertional limitations where the objective medical evidence indicated that claimant's pain had improved and he had demonstrated normal strength and range of movement despite herniated disc).

Furthermore, the RFC assessments of the two state agency physicians were completely consistent with the objective medical evidence of the treating physicians and both indicated that Caterino could perform light work with some exertional and postural limitations. The ALJ was entitled to give significant weight to those opinions. Berrios-Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 224 (1st Cir. 1981). Taken together, the medical evidence was reasonably sufficient to support the ALJ's RFC determination.

With respect to the evidence of fibromyalgia, the Court finds that the ALJ appropriately took that later diagnosis into account in assessing Caterino's RFC. Even assuming that the ALJ erred in not listing fibromyalgia as a severe impairment at step two of his analysis (even though the diagnosis occurred after the prescribed period and there was little objective evidence to tie that condition to plaintiff's previous impairments), that

omission nevertheless constitutes harmless error because the ALJ found other severe impairments at that step and considered the cumulative effect of those impairments on Caterino's RFC. Ramos-Birola v. Astrue, Civil Action No. 10-12275-DJC, 2012 WL 4412938, at *14 (D. Mass. Sept. 24, 2012).

In conclusion, the burden is on the plaintiff to present sufficient evidence of how her alleged impairment limits her functional capacity. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."); Boulia v. Colvin, Civil Action No. 15-30103-KAR, 2016 WL 38822870, at *2 (D. Mass. July 13, 2016) ("The claimant has the burden of proof through step four of the analysis."); Simons v. Colvin, Civil Action No. 13-11668-MBB, at *19 (D. Mass. July 15, 2015) (collecting cases). Caterino has proffered no evidence tying either her pain and numbness or her fibromyalgia to additional limitations on the functionality of her arms and hands beyond those already determined by the ALJ.

The ALJ's determination that plaintiff can perform light work, including lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently, is supported by substantial medical evidence indicating that Caterino had full motor strength and a fair and painless range of motion in her

upper extremities. The Commissioner's decision will therefore be affirmed.

## ORDER

For the foregoing reasons,

1) plaintiff's motion to reverse or remand the Commissioner's decision (Docket No. 14) is **DENIED** and

2) defendant's motion to affirm the Commissioner's decision (Docket No. 18) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated February 7, 2019